# Exhibit A

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Aug-13-2018 10:12 am

Case Number: CGC-18-568822

Filing Date: Aug-13-2018 10:08

Filed by: ROSSALY DELAVEGA

Image: 06453594

COMPLAINT

BRIAN MACK VS. BRISTOL-MEYERS SQUIBB COMPANY

001C06453594

**Instructions:**
Please place this sheet on top of the document to be scanned.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
Bristol-Myers Squibb Company; (see attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Brian Mack, an individual; (see attachment)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SAN FRANCISCO SUPERIOR COURT
400 MCALLISTER ST., SAN FRANCISCO, CA 94102

CASE NUMBER: *(Número del Caso):* CGC-18-568822

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
RUTH RIZKALLA, 1638 S Pacific Coast Hwy, Redondo Beach, CA 90277; 310-536-1000

DATE: *(Fecha)* AUG 13 2018 CLERK OF THE COURT Clerk, by *(Secretario)* DE LA VEGA-NAVARRO, Rossaly , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]




**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

BY FAX
ONE LEGAL LLC

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

SUM-200(A)

| SHORT TITLE: Mack v. Bristol-Myers Squibb Company | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

- → This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
- → If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

BRISTOL-MYERS SQUIBB COMPANY, MCKESSON CORPORATION, OTSUKA AMERICA PHARMACEUTICAL, INC., OTSUKA PHARMACEUTICAL CO., LTD., AND DOES 1 TO 100,



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

SUM-200(A)

| SHORT TITLE: Mack v. Bristol Myers-Squibb Company | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

- This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
- If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff [ ] Defendant [ ] Cross-Complainant [ ] Cross-Defendant

NAM WARREN, an Individual, MINDY TACKMIER, an Individual, JOSEPH HOGAN, LINDA ZUMWALT, an Individual, YVETTE WALTERS, an Individual, ARSENIO PELAYO, an Individual, COURTNEY LANDERS, an Individual, DIANA HARPER, an Individual, MENDY JOHNSON, an Individual, VICKI VANDENBURG, an Individual, KEITH NATHAN, an Individual, AMI BUBICA, an Individual, MICHELLE GILLIAM, an Individual, KEITH SHARP, an Individual, DILWORTH ROLAND, an Individual, BRENDA BARKER, an Individual, SARAH SAUSEDO, an Individual, LISA NORRIS, an Individual, AMANDA GALLAGHER, an Individual, JON HURLEY, an Individual, KEMIA GRIFFIN, an Individual, MALIK THROWER, an Individual, MIKITA MICKENS, an Individual, TANYA ZEIGLER, an Individual, FELICIA IVY, an Individual, CRYSTAL RUSSELL, an Individual, JESSICA YATES, an Individual, NICOLLETTE HURD, an Individual, JOHN YEE, an Individual, GEROMI CLAY, an Individual, TANA GILBERT, an Individual, VICKI GILLIGAN, an Individual, LEAH RITTER, an Individual, ROCHELLE SIGAN, an Individual, ROBYN BAIRD, an Individual, SAVANNAH WEST, an Individual, VINCE BULICKI, an Individual, BRENDA RILEY, an Individual, BRIAN WHITE, an Individual, ALLISON O'CAIN, an Individual, GREGORY DANEL, an Individual, RICHARD LEWIS, an Individual, LISA MCCLELLAN, an Individual, JULIUS WOODS, an Individual, ANTHONY SORREL, an Individual, KELLY STEWART, an Individual, CHARLES HARDY, an Individual, TISA BAKER, an Individual, DIANNE SMITH, an Individual, DIANNA KOBIELA, an Individual, ROCHELLE LAMBERT, an Individual, SYLVIA ZAJIS, an Individual, CAMERON SHIELDS, an Individual, TAMMIE LEVERT, an Individual, EDWIN PRESCOTT JR., an Individual, LIANA MASUCCI, an Individual, RICHARD FUSTON, an Individual, GARRY LONG, an Individual, KENNETH FARLEY SR., an Individual, KATHY BUNCH, an Individual, TAMMIE MERRIDTH, an Individual, REGINALD PHILLIPS, an Individual, TABATHER GILES, an Individual, BRANDON JONES, an Individual, MELINDA HENDRICKS, an Individual, MINDY GRANT, an Individual, CAROL BEAL, an Individual, MICHAEL SHANE VAUGHN, an Individual, HEATHER BROOKS, an Individual, JACQUELYN BISSELL, an Individual, JEANETTE ANDERSON, an Individual, COURTNEY RUMBLEY, an Individual, LEON LEWIS, an Individual



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Michael Louis Kelly (SBN 82063)
mlk@kirtlandpackard.com
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
Ruth Rizkalla (SBN 224973)
rr@kirtlandpackard.com
**KIRTLAND & PACKARD LLP**
1638 S Pacific Coast Hwy
Redondo Beach, CA 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001

*Attorneys for Plaintiffs*

FILED
San Francisco County Superior Court
AUG 19 2018
CLERK OF THE COURT
BY: Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR SAN FRANCISCO COUNTY**

BRIAN MACK, an Individual, NAM WARREN, an Individual, MINDY TACKMIER, an Individual, JOSEPH HOGAN, LINDA ZUMWALT, an Individual, YVETTE WALTERS, an Individual, ARSENIO PELAYO, an Individual, COURTNEY LANDERS, an Individual, DIANA HARPER, an Individual, MENDY JOHNSON, an Individual, VICKI VANDENBURG, an Individual, KEITH NATHAN, an Individual, AMI BUBICA, an Individual, MICHELLE GILLIAM, an Individual, KEITH SHARP, an Individual, DILWORTH ROLAND, an Individual, BRENDA BARKER, an Individual, SARAH SAUSEDO, an Individual, LISA NORRIS, an Individual, AMANDA GALLAGHER, an Individual, JON HURLEY, an Individual, KEMIA GRIFFIN, an Individual, MALIK THROWER, an Individual, MIKITA MICKENS, an Individual, TANYA ZEIGLER, an Individual, FELICIA IVY, an Individual, CRYSTAL RUSSELL, an Individual, JESSICA YATES, an Individual, NICOLLETTE HURD, an Individual, JOHN YEE, an Individual, GEROMI CLAY, an Individual, TANA GILBERT, an Individual, VICKI GILLIGAN, an Individual, LEAH

Case No. CGC-18-568822

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Strict Liability – Failure to Warn
2. Breach of Express Warrant
3. Breach of Implied Warrant
4. Negligence
5. Negligent Misrepresentation
6. Violation of Bus. & Prof. Code § 17200
7. Violation of Bus & Prof. Code §17500
8. Violation of Cal. Civ. Code § 1750
9. Fraudulent Concealment
10. Loss of Consortium

RITTER, an Individual, ROCHELLE SIGAN, an Individual, ROBYN BAIRD, an Individual, SAVANNAH WEST, an Individual, VINCE BULICKI, an Individual, BRENDA RILEY, an Individual, BRIAN WHITE, an Individual, ALLISON O'CAIN, an Individual, GREGORY DANEL, an Individual, RICHARD LEWIS, an Individual, LISA MCCLELLAN, an Individual, JULIUS WOODS, an Individual, ANTHONY SORREL, an Individual, KELLY STEWART, an Individual, CHARLES HARDY, an Individual, TISA BAKER, an Individual, DIANNE SMITH, an Individual, DIANNA KOBIELA, an Individual, ROCHELLE LAMBERT, an Individual, SYLVIA ZAJIS, an Individual, CAMERON SHIELDS, an Individual, TAMMIE LEVERT, an Individual, EDWIN PRESCOTT JR., an Individual, LIANA MASUCCI, an Individual, RICHARD FUSTON, an Individual, GARRY LONG, an Individual, KENNETH FARLEY SR., an Individual, KATHY BUNCH, an Individual, TAMMIE MERRIDTH, an Individual, REGINALD PHILLIPS, an Individual, TABATHER GILES, an Individual, BRANDON JONES, an Individual, MELINDA HENDRICKS, an Individual, MINDY GRANT, an Individual, CAROL BEAL, an Individual, MICHAEL SHANE VAUGHN, an Individual, HEATHER BROOKS, an Individual, JACQUELYN BISSELL, an Individual, JEANETTE ANDERSON, an Individual, COURTNEY RUMBLEY, an Individual, LEON LEWIS, an Individual,

Plaintiffs,

v.

BRISTOL-MYERS SQUIBB COMPANY, MCKESSON CORPORATION, OTSUKA AMERICA PHARMACEUTICAL, INC., OTSUKA PHARMACEUTICAL CO., LTD., AND DOES 1 TO 100,

Defendants.

Plaintiffs, who are residents of California, respectfully submit the following Complaint and Jury Demand against all Defendants, including Bristol-Myers Squibb Company, McKesson Corporation, Otsuka America Pharmaceutical, Inc., Otsuka Pharmaceutical Co., Ltd., and DOES 1 to 100, (herein collectively referred to as the "Defendants"), and allege the following upon personal knowledge, information, belief, and investigation of counsel.

## I. NATURE OF THE CASE

1. This is an action for damages related to Defendants' wrongful conduct in connection with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants' prescription drug(s)Abilify®, AbilifyMaintena®, and Aristada® (hereinafter "Abilify").

2. Defendants manufacture, promote, and sell Abilify as a prescription drug that treats schizophrenia, depression, bipolar I disorder, irritability associated with autism in adolescents and Tourette's Disorder. Abilify is manufactured as tablets, oral solution, and injection. Tens of thousands of individuals are prescribed Abilify each year.

3. Abilify injured Plaintiffs by causing harmful compulsive behaviors including compulsive gambling, compulsive shopping and hyper-sexuality. These compulsive behaviors resulted in substantial financial, mental, and physical damages.

4. Defendants knew or should have known that Abilify, when taken as prescribed and intended, causes and contributes to an increased risk of serious and dangerous side effects including, without limitation, uncontrollable compulsive behaviors such as compulsive gambling.

5. Defendants' labeling in the United States, Europe and Canada now warn about the risk of pathological gambling and other compulsive behaviors.

6. Defendants did not warn, advise, educate, or otherwise inform Abilify users or prescribers in the United States about the risk of compulsive gambling or other compulsive

behaviors. Prior to January 2016, the U.S. label made nomention of pathological gambling or compulsive behaviors whatsoever. In January 2016, Defendants simply added "pathological gambling" to the postmarketing experience section of the U.S. label. Defendants did not, however, make any mention of gambling or compulsive behaviors in the patient medication guide, the source of information most likely viewed by physicians and patients.

7. On May 3, 2016, the FDA announced that warnings regarding "compulsive or uncontrollable urges to gamble, binge eat, shop, and have sex" would be added to the Abilify label. In August 2016, warnings regarding compulsive gambling and other compulsive behaviors were added to the Abilify label, informing patients and physicians for the first time about these horrific and life-altering side effects. The label now warns that "[b]ecause patients may not recognize these behaviors as abnormal, it is important for prescribers to ask patients or their caregivers specifically about the development of new or intense gambling urges, compulsive sexual urges, compulsive shopping, binge or compulsive eating, or other urges while being treated with aripiprazole....Compulsive behaviors may result in harm to the patient and others if not recognized. Consider dose reduction or stopping the medication if a patient develops such urges."

8. Because of Defendants' actions and inactions, Plaintiffs were injured and suffered damages from their use of Abilify.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Article 6, §10 of the California Constitution and California Code of Civil Procedure § 410.10. The amount in controversy exceeds the jurisdictional limit of $25,000.

10. This Court has personal jurisdiction over Defendants, each of which is licensed to conduct or is systematically and continuously conducting business in the State of California, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including Abilify, to the residents in this state and other states. Defendants have sufficient minimum contacts in California and intentionally avail themselves of the markets within

California through the promotion, sale, marketing, and distribution of their products, including Abilify, thus rendering the exercise of jurisdiction by this Court proper and necessary.

11. Venue is proper in this judicial district pursuant to Code of Civil Procedure 395.5. Defendants transact business in San Francisco County and the events complained of occurred in part in San Francisco County. Moreover,Defendant McKesson Corporation resides in San Francisco County.

## III. PARTIES

12. Upon investigation and belief, Plaintiff BRIAN MACK is a resident of Simi Valley, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRIAN MACK has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

13. Upon investigation and belief, Plaintiff NAM WARREN is a resident of Long Beach, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. NAM WARRENhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

14. Upon investigation and belief, Plaintiff MINDY TACKMIER is a resident of Red Bluff, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MINDY TACKMIER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

15. Upon investigation and belief, Plaintiff JOSEPH HOGAN is a resident of Lake Isabella, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JOSEPH HOGAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

16. Upon investigation and belief, Plaintiff LINDA ZUMWALT is a resident of Royalton, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LINDA ZUMWALT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

17. Upon investigation and belief, Plaintiff YVETTE WALTERS is a resident of Indianapolis, Indiana, and was prescribed Abilify. Abilify was developed, manufactured,

promoted, marketed, packaged, distributed, and sold by Defendants. YVETTE WALTERS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

18. Upon investigation and belief, Plaintiff ARSENIO PELAYO is a resident of Aiea, Hawaii, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ARSENIO PELAYO has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

19. Upon investigation and belief, Plaintiff COURTNEY LANDERS is a resident of Bakersfield, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. COURTNEY LANDERS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

20. Upon investigation and belief, Plaintiff DIANA HARPER is a resident of Fairfield, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DIANA HARPER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

21. Upon investigation and belief, Plaintiff MENDY JOHNSON is a resident of Topeka, Kansas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MENDY JOHNSONhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

22. Upon investigation and belief, Plaintiff VICKI VANDENBURG, an Individual, is a resident of Topeka, Kansas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. VICKI VANDENBURG has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

23. Upon investigation and belief, Plaintiff KEITH NATHAN is a resident of Vernon Hills, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KEITH NATHAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

24. Upon investigation and belief, Plaintiff AMI BUBICA is a resident of Joliet, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed,

packaged, distributed, and sold by Defendants. AMI BUBICA has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

25. Upon investigation and belief, Plaintiff MICHELLE GILLIAM is a resident of Chicago, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MICHELLE GILLIAM has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

26. Upon investigation and belief, Plaintiff KEITH SHARP is a resident of Murrieta California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KEITH SHARP has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

27. Upon investigation and belief, Plaintiff DILWORTH ROLAND is a resident of Skokie, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DILWORTH ROLAND has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

28. Upon investigation and belief, Plaintiff BRENDA BARKER is a resident of Aloha, Oregon, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRENDA BARKER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

29. Upon investigation and belief, Plaintiff SARAH SAUSEDO is a resident of Bakersfield, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SARAH SAUSEDO has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

30. Upon investigation and belief, Plaintiff LISA NORRIS is a resident of Reno, Nevado, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LISA NORRIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

31. Upon investigation and belief, Plaintiff AMANDA GALLAGHER is a resident of Springfield, Oregon, and was prescribed Abilify. Abilify was developed, manufactured,

promoted, marketed, packaged, distributed, and sold by Defendants. AMANDA GALLAGHER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

32. Upon investigation and belief, Plaintiff JON HURLEY is a resident of Geary, Oklahoma, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JON HURLEY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

33. Upon investigation and belief, Plaintiff KEMIA GRIFFINis a resident of Los Angeles, California and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KEMIA GRIFFINhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

34. Upon investigation and belief, Plaintiff MALIK THROWER is a resident of Stone Mountain, Georgia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MALIK THROWERhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

35. Upon investigation and belief, Plaintiff MIKITA MICKENS is a resident of Darby, Pennsylvania, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MIKITA MICKENShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

36. Upon investigation and belief, Plaintiff TANYA ZEIGLER is a resident of Spring Valley Lake, California and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TANYA ZEIGLER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

37. Upon investigation and belief, Plaintiff FELICIA IVY is a resident of La Puente, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. FELICIA IVY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

38. Upon investigation and belief, Plaintiff CRYSTAL RUSSELL is a resident of Wayne, West Virginia, and was prescribed Abilify. Abilify was developed, manufactured,

promoted, marketed, packaged, distributed, and sold by Defendants. CRYSTAL RUSSELL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

39. Upon investigation and belief, Plaintiff JESSICA YATES is a resident of Steubenville, Ohio, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JESSICA YATES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

40. Upon investigation and belief, Plaintiff NICOLLETTE HURD is a resident of Vernon, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. NICOLETTE HURD has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

41. Upon investigation and belief, Plaintiff JOHN YEE is a resident of San Jose, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JOHN YEE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

42. Upon investigation and belief, Plaintiff GEROMI CLAY is a resident of Sacramento, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GEROMI CLAY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

43. Upon investigation and belief, Plaintiff TANA GILBERT is a resident of Lawton, Oklahoma, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TANA GILBERT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

44. Upon investigation and belief, Plaintiff VICKI GILLIGAN is a resident of Las Vegas, Nevada, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. VICKI GILLIGAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

45. Upon investigation and belief, Plaintiff LEAH RITTER is a resident of Spring, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed,

packaged, distributed, and sold by Defendants. LEAH RITTER has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

46. Upon investigation and belief, Plaintiff ROCHELLE SIGAN is a resident of North Ridgeville, Ohio, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ROCHELLE SIGAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

47. Upon investigation and belief, Plaintiff ROBYN BAIRD is a resident of Las Vegas, Nevada, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ROBYN BAIRDhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

48. Upon investigation and belief, Plaintiff SAVANNAH WEST is a resident of Gainesville, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SAVANNAH WEST has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

49. Upon investigation and belief, Plaintiff VINCE BULICKI is a resident ofQuakertown, Pennsylvania, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. VINCE BULICKI has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

50. Upon investigation and belief, Plaintiff BRENDA RILEY is a resident of Middleton, Ohio, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRENDA RILEY has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

51. Upon investigation and belief, Plaintiff BRIAN WHITE is a resident of Hoisington, Kansas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRIAN WHITE has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

52. Upon investigation and belief, Plaintiff ALLISON O'CAIN is a resident of Austin, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted,

marketed, packaged, distributed, and sold by Defendants. ALLISON O'CAIN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

53. Upon investigation and belief, Plaintiff GREGORY DANEL is a resident of Sacramento, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GREGORY DANEL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

54. Upon investigation and belief, Plaintiff RICHARD LEWIS is a resident of Stockton, California, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. RICHARD LEWIS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

55. Upon investigation and belief, Plaintiff LISA MCCLELLAN is a resident of Houston, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LISA MCCLELLAN has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

56. Upon investigation and belief, Plaintiff JULIUS WOODS is a resident of Fort Wayne, Indiana, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JULIUS WOODS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

57. Upon investigation and belief, Plaintiff ANTHONY SORREL is a resident of Fort Willingbor, New Jersey, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ANTHONY SORREL has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

58. Upon investigation and belief, Plaintiff KELLY STEWART is a resident of Fort Friendswood, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KELLY STEWART has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

59. Upon investigation and belief, Plaintiff CHARLES HARDY is a resident of Fort Troup, Texas, and was prescribed Abilify. Abilify was developed, manufactured, promoted,

marketed, packaged, distributed, and sold by Defendants. CHARLES HARDYhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

60. Upon investigation and belief, Plaintiff TISA BAKER is a resident of Decatur, Georgia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TISA BAKERhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

61. Upon investigation and belief, Plaintiff DIANNE SMITH is a resident of Nottingham, Pennsylvania, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DIANNE SMITHhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

62. Upon investigation and belief, Plaintiff DIANNA KOBIELA is a resident of Midlothian, Illinois, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. DIANNA KOBIELAhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

63. Upon investigation and belief, Plaintiff ROCHELLE LAMBERT is a resident of Queen Creek, Arizona, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. ROCHELLE LAMBERT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

64. Upon investigation and belief, Plaintiff SYLVIA ZAJIS is a resident of Warr Acres, Oklahoma, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. SYLVIA ZAJIShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

65. Upon investigation and belief, Plaintiff CAMERON SHIELDS is a resident of Bloomington, Indiana, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CAMERON SHIELDShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

66. Upon investigation and belief, Plaintiff TAMMIE LEVERT is a resident of Bessemer, Alabama, and was prescribed Abilify. Abilify was developed, manufactured,

promoted, marketed, packaged, distributed, and sold by Defendants. TAMMIE LEVERT has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

67. Upon investigation and belief, Plaintiff EDWIN PRESCOTT JR. is a resident of Twin Falls, Idaho, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. EDWIN PRESCOTT JR.has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

68. Upon investigation and belief, Plaintiff LIANA MASUCCI is a resident of Manassas, Virginia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LIANA MASUCCI has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

69. Upon investigation and belief, Plaintiff RICHARD FUSTON is a resident of Lancaster, Kentucky, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. RICHARD FUSTON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

70. Upon investigation and belief, Plaintiff GARRY LONG is a resident of Radford, Virginia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. GARRY LONGhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

71. Upon investigation and belief, Plaintiff KENNETH FARLEY SR. is a resident of Talladega, Alabama, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KENNETH FARLEY SR.has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

72. Upon investigation and belief, Plaintiff KATHY BUNCH is a resident of Bowling Green, Kentucky, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. KATHY BUNCH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

73. Upon investigation and belief, Plaintiff TAMMIE MERRIDTH is a resident of New Orleans, Louisiana, and was prescribed Abilify. Abilify was developed, manufactured,

promoted, marketed, packaged, distributed, and sold by Defendants. TAMMIE MERRIDTH has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

74. Upon investigation and belief, Plaintiff REGINALD PHILLIPS is a resident of Memphis, Tennessee, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. REGINALD PHILLIPS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

75. Upon investigation and belief, Plaintiff TABATHER GILES is a resident of Fort Bessemer, Alabama, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. TABATHER GILEShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

76. Upon investigation and belief, Plaintiff BRANDON JONES is a resident of Ashburn, Virginia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. BRANDON JONES has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

77. Upon investigation and belief, Plaintiff MELINDA HENDRICKS is a resident of Montgomery, Alabama, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MELINDA HENDRICKShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

78. Upon investigation and belief, Plaintiff MINDY GRANT is a resident of Tucson, Arizona, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MINDY GRANThas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

79. Upon investigation and belief, Plaintiff CAROL BEAL is a resident of Manson, Iowa, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. CAROL BEALhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

80. Upon investigation and belief, Plaintiff MICHAEL SHANE VAUGHN is a resident of Paducah, Kentucky, and was prescribed Abilify. Abilify was developed,

manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. MICHAEL SHANE VAUGHNhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

81. Upon investigation and belief, Plaintiff HEATHER BROOKS is a resident of Chalmette, Louisiana, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. HEATHER BROOOKS has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

82. Upon investigation and belief, Plaintiff JACQUELYN BISSELL is a resident of Las Vegas, Nevada, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JACQUELYN BISSELLhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

83. Upon investigation and belief, Plaintiff JEANETTE ANDERSON is a resident of Memphis, Tennessee, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. JEANETTE ANDERSON has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

84. Upon investigation and belief, Plaintiff COURTNEY RUMBLEY is a resident of Virginia Beach, Virginia, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. COURTNEY RUMBLEYhas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

85. Upon investigation and belief, Plaintiff LEON LEWIS is a resident of Mobile, Alabama, and was prescribed Abilify. Abilify was developed, manufactured, promoted, marketed, packaged, distributed, and sold by Defendants. LEON LEWIShas suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

86. Defendant Bristol-Myers Squibb Company ("Bristol-Myers") is a corporation organized and existing under the laws of Delaware, with its principal executive office at 345 Park Avenue, New York, New York. Upon information and belief, Bristol-Myers owns and operates

several facilities in the state of California, including a large research and development facility in Redwood City.

87. Defendant Otsuka Pharmaceutical Co., Ltd. ("OPC") is a Japanese company, with its principal office at 2-9, Kanda Tsukasa-machi, Chiyoda-ku, Tokyo 101-8535, Japan, and has a registered agent located at 351 West Camden Street, Baltimore, Maryland based upon information filed with the Maryland Department of Assessments and Taxation Business Services. Abilify is a trademark of Defendant Otsuka Pharmaceutical Co., Ltd. Defendant Otsuka Pharmaceutical Co. Ltd. wholly owns Defendant Otsuka America, Inc. ("OAI"), a holding company established in the United States in or around 1989. OAI is the parent of Defendant Otsuka America Pharmaceutical, Inc. ("OAPI"), Otsuka PharmaceuticalDevelopment & Commercialization, Inc. ("OPDC"), and Otsuka Maryland Medicinal Laboratories, Inc. ("OMML").

88. Defendant OAPI is incorporated in Delaware, with its principal place of business at 508 Carnegie Center, Princeton, New Jersey. OAPI developed, distributed, and marketed Abilify with OPC.

89. At all times relevant to this Master Complaint, Defendants OPC, OAI, OAPI, OPDC, and OMML (the "Otsuka entities") have operated in concert regarding the development, research, distribution, manufacturing, and/or marketing of Abilify. OPC has control over its subsidiaries' daily affairs and operations with respect to Abilify. The Otsuka entities work in concert as a single operation known as the Otsuka Group. At all times relevant herein, OAPI was the alter-ego of OPC.Upon information and belief, the Otsuka entities own and operateseveral facilities in the state of California, including a large research and development facility in Redwood City.

90. Defendant Bristol-Myers has operated in concert with the other Defendants and jointly marketed, sold, and promoted Abilify in the United States with the Otsuka Group, through Defendant OAPI and otherwise.

91. Defendant McKesson Corporation is a distributor of pharmaceutical and health care products that provides health information technology, medical supplies and care

management tools. Upon information and belief, McKesson Corporation manufactured and supplied Abilify, among other products, to both hospitals and pharmacies.

92. Defendant McKesson Corporation is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104. Upon investigation and belief, Plaintiffs are informed and believe that McKesson was involved in the manufacture, distribution, marketing sale, labeling and design of Abilify as detailed below. Specifically, McKesson is the 16th largest industrial corporation in America, with over $800 billion in revenue every year. McKesson is the sole supplier of numerous pharmaceuticals, including Abilify, to both the largest pharmacies and drug suppliers in the nation including pharmacies such as Wal-Mart, Safeway, Valu-Rite, and the smallest independent and community pharmacies.

93. Upon investigation and belief, McKesson does business throughout the State of California, and regularly and continuously did business within this judicial district including manufacturing, marketing, advertising, warning and precautions attendant to its use, selling, and distributing of Abilify. For example, McKesson Specialty Health, a division of McKesson, lists Abilify in its catalog of available products.

94. Upon investigation and belief, McKesson manufactured marketed, sold and distributed the Abilify administered to Plaintiffs.

95. Upon investigation and belief, McKesson is an agent of Defendants.

96. Upon investigation and belief, McKesson is an alter-ego of Defendants.

97. Defendants are collectively engaged in the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of pharmaceutical products, including Abilify. Otsuka "discovered" Abilify in 1988, obtained approval in the United States in November 2002, and in Japan in January 2006.

98. Defendants Bristol-Myers and Otsuka are and have been engaged in the business of researching, testing, developing, manufacturing, packaging, distributing, licensing, labeling, promoting, marketing and selling, either directly or indirectly through third parties or related entities, the pharmaceutical drug Abilify, in all states and throughout the United States, including California.

99. Defendants Bristol-Meyers and Otsuka conducted, funded, supported, supervised, and contributed to numerous studies and clinical trials about the efficacy, safety, tolerability, and side effect profile of Abilify in California. Hospitals and other healthcare facilities throughout the state of California were chosen and did act as sites for these studies and trials. Upon information and belief, this includes, for example, the studies that formed the basis of the FDA's decision to indicate Abilify for adjunctive therapy in major depression.

100. Defendant McKesson Corporation distributed, packaged, labeled, and promotedAbilifyin California and around the country throughout this period.

101. Defendants placed Abilify into the stream of commerce with the intent it would be marketed, advertised, and sold in all states and throughout the United States, including in California. Plaintiffs' use of, and ultimately injury by, Abilify in California and the various other States of the United States was not an isolated occurrence, but arose from the purposeful efforts of Defendants to create and serve the market for Abilify in California by the marketing, advertising, soliciting purchases, and selling of Abilify in those states.

102. Plaintiffs are presently without knowledge of the true names and capacities of the defendants sued herein as Does 1 through 100, and therefore sue these Defendants, pursuant to *California Code of Civil Procedure* §474, by such fictitious names. Plaintiffs will amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is a related entity, joint venture, subsidiary, parent, co-conspirator, agent, employee or affiliate of one or more of the named Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

## FACTUAL BACKGROUND

103. Abilify was first introduced in the United States in or around the fall of 2002. Abilify is an atypical anti-psychotic prescription medicine discovered by Defendant Otsuka Pharmaceutical Co., Ltd.

104. In or around October or November 2012, the European Medicines Agency required Defendants to warn patients and the European medical community that Abilify use included the risk of pathological gambling.

105. In particular, the European Medicines Agency required the European labeling to carry the following language in the "Special Warnings and Precautions For Use" section of the label:

> **<u>Pathological Gambling</u>**
>
> **Post-marketing reports of pathological gambling have been reported among patients prescribed ABILIFY, regardless of whether these patients had a prior history of gambling. Patients with a prior history of pathological gambling may be at increased risk and should be monitored carefully.**

106. The European labeling for Abilify also carries additional language concerning adverse reactions that have been reported during post-marketing surveillance relating to gambling side effects. Under a section entitled "Undesirable effects," it provides:

> **Psychiatric Disorders: agitation, nervousness, pathological gambling, suicide attempt, suicidal ideation, and completed suicide.**

107. In or around November 2015, Canadian regulators concluded that there is "a link between the use of aripiprazole and a possible risk of pathological gambling or hypersexuality" and found an increased risk of pathological (uncontrollable) gambling and hypersexuality with Abilify use.

108. In or about November 2015, the following warning statement regarding the risk of pathological gambling was added to the Canadian prescribing information for Abilify:

> **Pathological Gambling**
>
> **Post-marketing reports of pathological gambling have been reported in patients treated with ABILIFY. In relation to pathological gambling, patients with a prior history of gambling disorder may be at increased risk and should be monitored carefully.**

109. Despite these warnings and advisories in Europe and Canada—for the same drug sold to patients in the United States—the labeling for Abilify in the United States did not adequately warn about the risk of compulsive gambling or other compulsive behaviors and contained no mention that pathological gambling and other compulsive behaviors had been reported in patients prescribed Abilify. It was not until January 2016, after the patent for Abilify

expired in the United States, that pathological gambling was added only to the Postmarketing Experience section of the label; Defendants failed to make mention of gambling in the patient medication guide, a source of information likely viewed by physicians and patients. On May 3, 2016, the FDA issued a warning that Abilify was associated with "compulsive or uncontrollable urges to gamble, binge eat, shop, and have sex." The FDA recommended that doctors "make patients and caregivers aware of the risk of these uncontrollable urges," "closely monitor" patients, and consider reducing or stopping Abilify if compulsivity emerges.

110. The labeling for Abilify in the United States contained no mention of the word "gambling" until January 2016.

111. Defendants wrongfully and unjustly profited at the expense of patient safety and full disclosure to the medical community by failing to include language about gambling in the United States labeling and by failing to otherwise warn the public and the medical community about Abilify's association with gambling—despite opportunities and a duty to do so. As a result, Defendants have madesignificantly more revenue from Abilify sales in the United States compared to Europe.

112. Bristol-Myers touts Abilify as its "2013 largest-selling product" noting sales of $2.3 billion. Bristol-Myers recently reported U.S. revenues from Abilify sales of $417 million over three months ending June 30, 2014, and worldwide revenues of $555 million over the same time period.

113. Since its introduction to the United States market, Abilify has generally been used to treat patients with schizophrenia, bipolar disorder, as an adjunct for depression, and autism spectrum disorders.

114. In 2001, Defendant Otsuka Pharmaceutical Co., Ltd. submitted a New Drug Application ("NDA") to the United States Food and Drug Administration ("FDA") for Abilify (aripiprazole). This initial NDA sought approval to market Abilify in 2, 5, 10, 15, 20 and 30 mg tablets as a treatment for schizophrenia. The NDA was approved on November 15, 2002.

115. In November 2002, the FDA required Defendants to submit results of Study 138047 to address the longer-term efficacy of Abilify in the treatment of adults with schizophrenia.

116. On December 3, 2002, Defendant Otsuka America Pharmaceutical, Inc. submitted a Supplemental New Drug Application (NDA 21-436/S-001) on thelonger-term efficacy of Abilify in the treatment of schizophrenia. This application was approved on August 28, 2003.

117. In June 2003, Otsuka Maryland Research Institute submitted another Supplemental New Drug Application (NDA 21-436/S-002) for Abilify tablets as a treatment for bipolar disorder. This application was approved on September 29, 2004.

118. In May 2007, Otsuka Pharmaceutical Development & Commercialization, Inc. submitted another Supplemental New Drug Application (NDA 21-436/S-018) for Abilify tablets as an adjunctive treatment for patients with major depressive disorder. This application was approved on November 16, 2007.

119. In contrast, in Europe, Abilify is not indicated to treat depression. The European Medicines Agency declined to approve Abilify as an add-on treatment for depression because of concerns about its efficacy for that indication.

120. In or around 1999, Bristol-Myers and Otsuka entered into an agreement to co-develop and "commercialize" Abilify (hereinafter referred to as "Defendants' Marketing Agreement"). Under the terms of Defendants' Marketing Agreement, Bristol-Myers was to market and promote Abilify in the United States and the European Union, in collaboration with Otsuka Pharmaceutical Co., Ltd., and under Otsuka Pharmaceutical Co., Ltd.'s trademark.

121. Defendants' Marketing Agreement also provided that Bristol-Myers and Otsuka Pharmaceutical Co., Ltd. would collaborate to complete clinical studies for schizophrenia, and that Bristol-Myers would conduct additional studies for new dosage forms and new indications.

122. Bristol-Myers began co-promoting Abilify with Otsuka Pharmaceutical Co., Ltd. in the United States and Puerto Rico in or around November 2002. Defendants' Marketing Agreement was extended in or around 2009.

123. Bristol-Myers' Marketing Agreement with Otsuka had been due to expire in or around April 2015, just after the predicted expiration of Abilify's patent protection in the United States. According to a revised marketing agreement, Bristol-Myers purported to no longer market and promote Abilify as of January 1, 2013, but agreed to continue to carry out its other responsibilities, including manufacturing for sale to third-party customers. Nevertheless, Bristol-

Myers continued to market and promote Abilify, for example, through its website, through September 2015.

124. Defendants knew or should have known that Abilify can cause compulsive behaviors like gambling. Despite their significant collective resources, and signals that Abilify is associated with compulsive behaviors such as gambling and other compulsive behaviors, Defendants failed to fully and adequately test, research or investigateAbilify and itsassociation with compulsive behaviors to the detriment of Plaintiffs, Abilify users, the public, the medical community, and prescribing doctors.

125. Medical providers and patients were unaware of the association between compulsive behaviors like gambling and Abilify. They could not have reasonably known or learned through reasonable diligence of the association.

126. Compulsive gambling is a major psychiatric disorder. The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") first recognized pathological gambling as a psychiatric disorder in 1980.

127. Originally, the disorder was classified as an impulse control disorder. The current version of the DSM, the DSM-V, renamed pathological gambling as "gambling disorder." DSM-V reclassified gambling disorder under the category Substance-Related and Addictive Disorders in order to reflect evidence that gambling behaviors activate or are activated by reward systems similar to those activated by drugs of abuse, and produce some behavioral symptoms comparable to those produced by substance abuse disorders.

128. Abilify is variably a partial and full dopamine agonist. Dopamine is a neurotransmitter that helps control the brain's reward and pleasure centers.

129. Dopamine's role in compulsive behavior and pathological gambling is well-known. Dopaminergic reward pathways have frequently been implicated inthe etiology of addictive behavior. Scientific literature has identified dopamine as a potential cause of pathological gambling for years.

130. Abilify's dopaminergic activity at the mesolimbic circuit, especially at the nucleus accumbens, has been associated with compulsive behavior in Abilify patients.

131. Defendants acknowledged that Abilify was a plausible mechanism for pathological gambling in their September 2011 6-Month Periodic Safety Update Report. The Report states that an article, Chau et al., *The Neural Circuitry of Reward and Its Relevance to Psychiatric Disorders,* "does suggest a possible mechanism by which drugs that act on dopamine neurons, like aripiprazole, might possibly have some effect on behavior related to reward."

132. Defendants' September 2011 6-Month Periodic Safety Update Report submitted to the European Medicines Agency acknowledged seven serious reports of pathological gambling, three in the medical literature and four spontaneous reports. The report also noted sixteen cases of pathological gambling in the Bristol-Myers company safety database.

133. The Medical Assessment of the pathological gambling cases in Defendants' September 2011 6-Month Periodic Safety Update Report did not exclude Abilify as the cause of the compulsive gambling adverse events.Defendants concluded that "a causal role of aripiprazole could not be excluded" and that "aripiprazole was suggested by the temporal relationship."

134. The European Final Assessment Report of the September 2011 6-Month Periodic Safety Update Report concluded that with regard to compulsive gambling "in all of the reported cases we have a (+) temporal; (+) dechallenge and in one case a (+) rechallenge."

135. Numerous case reports have been published in the medical literature linking Abilify to compulsive behavior, including at least seventeen cases of compulsive gambling. Gaboriau et al. examined case reports of compulsive gambling and found that the probability that pathological gambling was actually due to Abilify was "possible" in sixteen of the cases and "doubtful" in only one of the cases.

136. Several case reports demonstrate what is known as a challenge, de-challenge, and re-challenge.

137. Challenge is the administration of a suspect product by any route.

138. De-challenge is the withdrawal of the suspected product from the patient's therapeutic regime. A positive de-challenge is the partial or complete disappearance of an adverse experience after withdrawal of the suspect product. For example, a positive de-challenge occurs when a patient ceases use of Abilify and pathological gambling behaviors cease concurrently.

139. Re-challenge is defined as a reintroduction of a product suspected of having caused an adverse experience following a positive de-challenge. A positive re-challenge occurs when similar signs and symptoms reoccur upon reintroduction of the suspect product. For example, a positive re-challenge occurs when a patient reintroduces Abilify into her treatment regime and pathological gambling behavior reoccurs in a similar manner as such behaviors had existed when the patient previously used Abilify.

140. A positive de-challenge is considered evidence that a drug caused a particular effect, as is a positive re-challenge.

141. From May 1, 2008 to May 1, 2011, the FDA received thousands of serious adverse event reports concerning Abilify (n=4599), including over two-thousand serious adverse drug experiences of which 193 involved children (0-16 years old).

142. Serious adverse events are drug experiences including the outcomes of death, life-threatening events, hospitalization, disability, congenital abnormality, and other harmful medical events.

143. From 2005 to 2013, an FDA report showed that Abilify accounted for at least fifty-four reports of compulsive or impulsive behavior problems, including thirty reports of compulsive gambling, twelve reports of impulsive behavior, nine reports of hypersexuality, and three reports of compulsive shopping.

144. A disproportionality study of the FDA Adverse Event Reporting System showed a proportional reporting ratio for compulsivity of 8.6 for Abilify. A ratio of more than three indicates a signal of an adverse event.

145. An analysis of the FDA Adverse Event Reporting System shows an escalating number of reports. Twenty-nine reports of gambling behavior were made to the FDA in 2014.

146. The 2014 FDA Adverse Event Reporting System data shows a proportional reporting ratio for compulsive gambling of 64.3 for Abilify. The same data demonstrates Abilify is unique in this regard and compulsive gambling is not a class-wide problem among anti-psychotic medications.

147. Defendants have not adequately studied Abilify. A review of all the randomized clinical trials comparing Abilify to other schizophrenia drugs concluded that the information on comparisons was of limited quality, incomplete, and problematic to apply clinically.

148. Despite evidence that Abilify causes compulsive behaviors like pathological gambling and calls from the medical community to conduct further research and warn patients about this possible effect of Abilify, Defendants have either failed to investigate or conduct any studies on the compulsive behavior side effects of Abilify or failed to make public the results of any studies or investigations that they might have done.

149. Abilify is not very efficacious. According to a rigorous study by the Cochrane Collaboration, there is limited evidence that Abilify leads to symptom reduction when added to antidepressants, and side effects are more frequent under Abilify augmentation treatment.

150. The Drug Facts Box for Abilify for major depression includes a "summary" of the combined data from the two identical six-week randomized trials that were the basis for FDA drug approval for this indication. The box shows that Abilify has only a modest benefit: on average, patients on Abilify improved by 3 points more (*on a scale of 60*) than patients on placebo, and only an additional 11% of patients had a clinically important response as defined in the trial.

151. Despite the risks of serious adverse events, and the lack of adequate testing, Defendants aggressively promoted Abilify, including illegal promotion for off-label use. In 2007, Bristol-Myers reportedly paid $515 million to settle federal and state investigations into off-label marketing of Abilify for pediatric use and to treat dementia-related psychosis. Otsuka America Pharmaceutical, Inc. later paid more than $4 million to resolve the allegations.

152. The FDA issued a letter dated April 17, 2015 finding Abilify promotional material "false or misleading because it makes misleading claims and presentations about the drug." The FDA found the material "misleading because it implies that Abilify offers advantages over other currently approved treatments forbipolar disorder or MDD when this has not been demonstrated." The FDA also found the cited references "not sufficient to support claims and presentations suggesting that Abilify has been demonstrated to modulate dopaminergic and serotonergic

activity, or modulate neuronal activity in both hypoactive and hyperactive environments in humans.

153. Upon information and belief, Defendants have invested millions of dollars in teams of pharmaceutical sales representatives who visit and contact members of the medical community, including prescribing doctors, purporting to "educate" them about Abilify. Upon information and belief, these pharmaceutical sales representatives have not notified patients, the medical community, or prescribers in the United States that Abilify causes, is linked to, or might be associated with compulsive gambling, pathological gambling, or gambling addiction.

154. Defendants have also been accused of instructing representatives speaking about Abilify on their behalf pursuant to consultant contracts to deliberately lie to and/or mislead their audiences. For example, celebrity author, bipolar patient, and former Abilify patient spokesperson Andy Behrman alleged in an interview published by the Wall Street Journal that Defendant Bristol-Myers' employees instructed him to tell audiences that he was on Abilify monotherapy and had no experienced any side effects, despite both of these claims being false. Upon information and belief, Defendants pursued these types of practices with other paid spokespeople as well, in an effort to overstate the efficacy and downplay the major safety issues of Abilify.

155. Defendants have invested millions of dollars in "Direct to Consumer" advertising. None of the advertising in the United States notifies patients, the medical community, or prescribers that Abilify use causes, is linked to, or might be associated with compulsive gambling, pathological gambling, or gambling addiction.

156. Defendants' Direct to Consumer advertising minimizes risks while over-promoting the drug.

157. As a result of Defendants' misleading promotional campaigns, Abilifyhas occupied the top sales position for a prescription drug in the United States (but has only ever reached seventh place in the global ranking of drug sales).

158. Defendants have made payments to doctors to promote Abilify. From August 2013 to December 2014, $10.6 million in payments relating to Abilify were made to 21,155 physicians in the United States.

159. To date, Defendants have not adequately notified or warned patients, the medical community, or prescribers in the United States that Abilify causes, is linked to, and is associated with compulsive gambling, pathological gambling, or gambling addiction.

160. Prior to May 2016, upon information and belief, Defendants had not sent out any "Dear Doctor" letters to inform the medical community of the risk or association of Abilify use and gambling.

161. The labeling for Abilify in the United States lists serious side effects that have been reported with Abilify, but did not list gambling, pathological or otherwise in any form until January 2016 when it was only added to the post-marketing experience section of the label. Prior to May 2016, the label did not mention compulsive behaviors other than pathological gambling or adequately warn patients about the risk of compulsive gambling. Defendants also did notmake any mention of gambling in the patient medication guide, the source of information most likely viewed by physicians and patients.

162. The labeling in the United States contradicts the labeling in Europe and Canada by not providing adequate warnings and not cautioning that patients should be closely monitored, and does not adequately inform patients and physicians that gambling and other compulsive behaviors have been associated with Abilify use.

163. Defendant Otsuka America Pharmaceutical, Inc. maintains a website promoting Abilify, www.abilify.com. The website includes, among other information, "tips for taking Abilify," links to "a 30-day free trial & savings on refills," and "important safety information" for Abilify. Although it has sections about "important safety information," nowhere on the website did it mention the word "gambling" prior to 2015.

164. Also, Defendant Otsuka America Pharmaceutical, Inc. operated another website promoting Abilify, www.addabilify.com. Prior to 2015, this website included, among other information, "important safety information," "tips for family and friends," "treatment FAQs," "side effects FAQs," and "what your doctor needs to know" concerning Abilify. Nowhere on the website did it mention the word "gambling."

165. Defendant Bristol-Myers previously promotedAbilify on its own website, www.bms.com ("BMS website"), noting it was approved in November 2002 and is "jointly

marketed in the U.S. by Bristol-Myers Squibb and Otsuka America Pharmaceutical." The BMS website also included a link to the www.abilify.com website. Nowhere on the BMS website did it mention the word "gambling."

166. Likewise, Defendant Otsuka Pharmaceutical Co., Ltd. promotes Abilify on its own website, www.otsuka.co.jp/en/ ("Otsuka website"), noting it was "researched and developed by Otsuka Pharmaceutical" and "launched" in the United States in 2002. Nowhere on the Otsuka website does it mention the word "gambling."

**EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

167. Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including the discovery rule and/or fraudulent concealment.

168. The discovery rule should be applied to toll the running of the statute of limitations until the Plaintiffs discovered or reasonably should have discovered Plaintiffs' injuries and the causal connection between the injuries and Defendants' product.

169. Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiffs the truth, quality and nature of Plaintiffs' injuries and the connection between the injuries and Defendants' tortious conduct. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' prescribing physicians the true risks associated with Abilify.

170. Defendants were under a duty to disclose the true character, quality and nature of the risks associated with use of Abilify as this was non-public information over which Defendants had and continue to have exclusive control. Defendants knew that this information was not available to Plaintiffs, Plaintiffs' medical providers and/or health-care facilities. In addition, Defendants are estopped from relying on any statute of limitation because of their intentional concealment of these facts.

171. Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior to 2016.

## FIRST CAUSE OF ACTION

**Strict Liability – Design, Manufacturing and Warning**

172. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

173. Defendants had a duty to provide adequate warnings and instructions for Abilify, to use reasonable care to design a product that is not unreasonably dangerous to users, and to adequately test their product.

174. The Abilify supplied to Plaintiffs by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer or supplier, it was in an unreasonably dangerous and a defective condition for its intended use and it posed a risk of serious compulsive behaviors and harm to Plaintiffs and other consumers which could have been reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design.

175. The Abilify supplied to Plaintiffs by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer or supplier, Abilify had not been adequately tested, was in an unreasonably dangerous and a defective condition, and it posed a risk of serious compulsive behaviors and harm to Plaintiffs and other consumers.

176. Also, Abilify's limited and unproven effectiveness did not outweigh the risks posed by the drug. In light of the utility of the drug and the risk involved in its use, the design of Abilify makes the product unreasonably dangerous.

177. The Abilify supplied to Plaintiffs by Defendants was defective due to inadequate warnings or instructions concerning the true risks of its use.

178. Defendants, and each of them, knew and intended that Abilify would be used by the ordinary purchaser or user without inspection for defects therein and without knowledge of the hazards involved in such use.

179. Defendants knew or should have known through testing, scientific knowledge, advances in the field or otherwise, that the product created a risk of serious compulsive behaviors and harm, and was unreasonably dangerous to Plaintiffs and other consumers, about which Defendants failed to warn.

180. The Abilify supplied to Plaintiffs by Defendants was defective, dangerous, and had inadequate warnings or instructions at the time it was sold, and Defendants also acquired additional knowledge and information confirming the defective and dangerous nature of Abilify. Despite this knowledge and information, Defendants failed and neglected to issue adequate warnings or post-sale warnings that Abilify causes serious compulsive behaviors and harm.

181. Defendants failed to provide adequate warnings to users, purchasers, or prescribers of Abilify, including Plaintiffs and prescribing physicians, and instead continued to sell Abilify in an unreasonably dangerous form without adequate warnings or instructions. Defendants knew or should have known that members of the general public and the medical community had no knowledge that Plaintiffs and other users of their product could cause the injuries herein alleged. Defendants also knew or should have known that Plaintiffs and other users of their product would assume that said use was safe, and that no side effects were likely to exist beyond those of which Defendants had warned.

182. By failing to adequately test and research compulsive behaviors and harms associated with Abilify use, and by failing to provide appropriate warnings about Abilify use and associations with compulsive behaviors such as gambling, patients and the medical community, including prescribing doctors, were inadequately informed about the true risk-benefit profile of Abilify and were not sufficiently aware that compulsive behaviors such as gambling might be associatedwith Abilify use. As such, the medical community was not learned on the true risk-benefit profile of Abilify. Nor were the medical community, patients, patients' families, or regulators appropriately informed that compulsive behaviors such as gambling might be a side effect of Abilify use and should or could be reported as an adverse event.

183. As a direct and proximate result of Defendants' conduct, including the inadequate warnings, dilution or lack of information, lack of adequate testing and research, and the defective and dangerous nature of Abilify, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## SECOND CAUSE OF ACTION

**Breach of Express Warranty**

184. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

185. Defendants, who designed, tested, manufactured, packaged, supplied, distributed, marketed, advertised, promoted, recommended, and sold Abilify, expressly warranted to physicians and consumers, including Plaintiffs and Plaintiffs' physicians, that Abilify was safe and well-tolerated.

186. At the time of making the aforementioned express warranties, Defendants had knowledge of the purpose for which Abilify was to be used, and warranted the same to be in all respects fit, safe, effective, and proper for such purpose. Abilify was unaccompanied by warnings of its dangerous propensities that were either known or should have been known to Defendants at the time of distribution.

187. Abilify does not conform to these express representations because it is neither safe nor well-tolerated. Instead, it significantly increases the risk of the patient engaging in compulsive behaviors such as pathological gambling addiction, which causes monetary losses and in turn can lead to financial ruin, job loss, familial devastation, and suicide attempts.

188. Plaintiffs and their prescribing physicians reasonably relied upon the skill and judgment of Defendants, and upon the aforementioned express warranties, in using and prescribing Abilify. The warranty and representations were untrue in that the product was unsafe, and thus unsuited for the use for which it was intended.

189. As a direct and proximate result of the breach of Defendants' warranties, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## THIRD CAUSE OF ACTION

**Breach of Implied Warranty**

190. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

191. At the time Defendants manufactured, packaged, marketed, sold, and distributed Abilify, Defendants knew of the use for which Abilify was intended, and they impliedly warranted Abilify to be of merchantable quality, safe and fit for such use.

192. Defendants knew, or had reason to know, that Plaintiffs and Plaintiffs' physicians would rely on the Defendants' judgment and skill in providing Abilify for its intended use.

193. Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendants as to whether Abilify was of merchantable quality, safe, and fit for its intended use.

194. Contrary to such implied warranty, Abilify was not of merchantable quality or safe or fit for its intended use, because the product was, and is, unreasonably dangerous, defective and unfit for the ordinary purposes for which Abilify was used.

195. Also, Abilify's limited and unproven effectiveness did not outweigh the risks posed by the drug. In light of the utility of the drug and the risk involved in its use, the design of Abilify makes the product unreasonably dangerous.

196. As a direct and proximate result of the breach of implied warranty, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## FOURTH CAUSE OF ACTION

**Negligence**

197. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

198. At all times material herein, Defendants had a duty to exercise reasonable care and had the duty of an expert in all aspects of the design, formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing, promotion, advertising, sale, warning, post-sale warning, testing, and research to assure the safety of the product when used as intended or in a way that Defendants could reasonably have anticipated, and to assure that the consuming public, including Plaintiffs and Plaintiffs' physicians, obtained accurate information and adequate instructions for the safe use or non-use of Abilify.

199. Defendants had a duty to warn Plaintiffs, Plaintiffs' physicians, and the public in general of Abilify's dangers and serious side effects, including serious compulsive behaviors like pathological gambling addiction, since it was reasonably foreseeable that an injury could occur because of Abilify's use.

200. At all times material herein, Defendants failed to exercise reasonable care and the duty of an expert and knew, or in the exercise of reasonable care should have known, that Abilify was not properly manufactured, designed, compounded, tested, inspected, packaged, labeled, warned about, distributed, marketed, advertised, formulated, promoted, examined, maintained, sold, prepared, or a combination of these acts.

201. Each of the following acts and omissions herein alleged was negligently and carelessly performed by Defendants, resulting in a breach of the duties set forth above. These acts and omissions include, but are not restricted to:

(a) Negligent and careless research and testing of Abilify;

(b) Negligent and careless design or formulation of Abilify;

(c) Negligent and careless failure to give adequate warnings that would attract the attention of Plaintiffs, Plaintiffs' physicians, and the public in general of the potentially dangerous, defective, unsafe, and deleterious propensity of Abilify and of the risks associated with its use;

(d) Negligent and careless failure to provide instructions on ways to safely use Abilify to avoid injury;

(e) Negligent and careless failure to explain the mechanism, mode, and types of adverse events associated with Abilify;

(f) Negligent representations that Abilify was safe or well-tolerated; and

(g) Negligent and careless failure to issue adequate post-sale warnings that Abilify causes an increased risk of compulsive behaviors, including pathological gambling.

202. Despite the fact that Defendants knew or should have known that Abilify caused unreasonable and dangerous side effects, and that consumers such as Plaintiffs would thereby foreseeable suffer harm, Defendants continued to market Abilify while willfully and deliberately failing to exercise due care in the provision of adequate warnings of Abilify's dangerous propensities.

203. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

204. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

205. Defendants owed a duty in all of their several undertakings, including in the communication and dissemination of information concerning Abilify, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

206. Defendants misrepresented to consumers and physicians, including Plaintiffs and Plaintiffs' physicians and the public in general, that Abilify was safe or well-tolerated when used as instructed, and that Abilify was safe or well-tolerated, when, in fact, Abilify was dangerous to the well-being of patients.

207. At the time Defendants promoted Abilify as safe or well-tolerated, they did not have adequate proof upon which to base such representations, and, in fact, knew or should have known that Abilify was dangerous to the well-being of Plaintiffs and others.

208. Defendants failed to exercise reasonable care and competence in obtaining or communicating information regarding the safe use of Abilify andotherwise failed to exercise reasonable care in transmitting information to Plaintiffs, Plaintiffs' physicians, and the public in general.

209. Defendants made the aforesaid representations in the course of Defendants' business as designers, manufacturers, and distributors of Abilify despite having no reasonable basis for their assertion that these representations were true or without having accurate or sufficient information concerning the aforesaid representations. Defendants were aware that without such information they could not accurately make the aforesaid representations.

210. At the time the aforesaid representations were made, Defendants intended to induce Plaintiffs or Plaintiffs' physicians to rely upon such representations.

211. At the time the aforesaid representations were made by Defendants, and at the time Plaintiffs received Abilify, Plaintiffs or Plaintiffs' physicians, and the public in general, reasonably believed them to be true. In reasonable and justified reliance upon said representations, Plaintiffs used Abilify.

212. As a direct and proximate result of reliance upon Defendants' misrepresentations, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravationof previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## SIXTH CAUSE OF ACTION

### Violation of Bus.& Prof. Code § 17200

213. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

214. California Business & Professions Code§ 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

215. The acts and practices described above were and are likely to mislead the general public about the dangerous propensities of Abilify, and therefore constitute unfair business practices within the meaning of § 17200. The acts of untrue and misleading advertising set forth in the preceding paragraphs are, by definition, violations of § 17200. Such conduct includes, but is not limited to:

(a) Representing that Abilify is safe, fit, and effective for human consumption, knowing that said representations were false, and concealing that Abilify had a dangerous propensity to cause injury to its users;

(b) Engaging in advertising programs designed to create the image, impression, and belief among consumers and physicians that Abilify is safe for human consumption, even though Defendants knew that this was false, and further were without reasonable grounds to believe that it was true;

(c) Purposely downplaying and understating the health hazards and risks associated with Abilify by neglecting to adequately warn about its propensity to cause pathological gambling and other impulse-control disorders;

(d) Issuing promotional literature and commercials that deceived users and potential users of Abilify, such as Plaintiffs, by relaying only positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known and serious adverse health effects and concealing material relevant information regarding the safety and efficacy of Abilify;

(e) Failing to take any appropriate action to apprise Plaintiffs, other users, and their physicians of necessary information concerning the safety and efficacy of Abilify, such as by failing to engage in proper pharmacovigilance, signal detection, and follow up, failure to conduct adequate research, tests, and studies, and failure to disseminate to

prescribing physicians appropriate and required product safety information.

216. These practices constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business & Professions Code § 17200.

217. These practices constitute a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

218. As a result of the aforesaid conduct, Defendants have and will continue to be unjustly enriched. Specifically, Defendants have received hundreds of millions of dollars in ill-gotten gains from the sale of Abilify in California, sold in large part as a result of the acts and omissions described herein.

219. Plaintiffs request, pursuant to California Business & Professions Code § 17203, an order of this court compelling Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.

**SEVENTH CAUSE OF ACTION**

**Violations of Bus.& Prof. Code § 17500**

220. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

221. California Business & Professions Code § 17500 provides that it is unlawful for any person, firm, corporation, or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

222. At all times alleged herein, Defendants have committed acts of disseminating untrue and misleading statements with the intent to induce the public to purchase and use Abilify, such as the following:

(a) Representing that Abilify was safe, fit, and effective for human consumption, knowing that said representations were false, and concealing that Abilify had a serious propensity to cause harm to users;

(b) Engaging in advertising and promotional programs designed to create the image, impression, and belief by consumers and physicians that Abilify is safe for human consumption, even though the Defendants knew that this was false, and even though Defendants had no reasonable grounds to believe it to be true;

(c) Purposely downplaying and understating the health hazards and risks associated with Abilify, such as by concealing the existence of side effects such as impulse-control disorders;

(d) Issuing promotional literature and television commercials deceiving potential users of Abilify by relaying only positive information, including testimonials of satisfied users, and manipulating statistics to suggest widespread tolerability, while downplaying the known serious adverse health effects of Abilify.

223. These practices constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business & Professions Code § 17500.

224. These practices constitute a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

225. As a result of the aforesaid conduct, Defendants have and will continue to be unjustly enriched. Specifically, Defendants have received hundreds of millions of dollars in ill-gotten gains from the sale of Abilify in California, sold in large part as a result of the acts and omissions described herein.

226. Plaintiffs request, pursuant to California Business & Professions Code § 17535, an order of this court compelling Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.

## EIGHTH OF CAUSE OF ACTION

### Violations of Cal. Civ. Code § 1750

227. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

228. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, by the acts and misconduct alleged herein, violated the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, and have resulted, in the sale of goods to consumers.

229. Plaintiffs are "consumers" within the meaning of California Civil Code § 1761(d).

230. Defendants have violated, and continue to violate, the CLRA in representing that goods have characteristics and benefits which they do not have, in violation of California Civil Code § 1770(a)(5).

231. At all times alleged herein Defendants have committed acts of disseminating untrue and misleading statements as defined by California Civil Code § 1770, by engaging in the following acts and practices with the intent to induce members of the public to purchase and use Abilify:

(a) Representing that Abilify was safe, fit, and effective for human consumption, knowing that said representations were false, and concealing that Abilify had a serious propensity to cause harm to users;

(b) Engaging in advertising and promotional programs designed to create the image, impression, and belief by consumers and physicians that Abilify is safe for human consumption, even though the Defendants knew that this was false, and even though Defendants had no reasonable grounds to believe it to be true;

(c) Purposely downplaying and understating the health hazards and risks associated with Abilify, such as by concealing the existence of side effects such as impulse-control disorders;

(d) Issuing promotional literature and television commercials deceiving potential users of Abilify by relaying only positive information, including testimonials of satisfied users, and manipulating statistics to suggest widespread tolerability, while downplaying the known serious adverse health effects of Abilify.

232. The foregoing practices constitute false and misleading advertising and representations within the meaning of California Civil Code § 1770. The untrue and misleading statements described herein constitute a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein. Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiffs and others like them will continue to be harmed by the wrongful actions and conduct of Defendants. Pursuant to California Civil Code § 1780, Plaintiffs seek an order from this court for injunctive relief calling for Defendants, and each of them, to cease the deceptive business practices described herein.

## NINTH CAUSE OF ACTION

### Fraudulent Concealment

233. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

234. At all material relevant times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and Plaintiff's physicians the true facts concerning Abilify; that is, that Abilify is dangerous and defective, and likely to cause serious health consequences to users, such as those alleged herein, without providing a significant benefit.

235. Throughout the relevant time period, Defendants knew that Abilify was defective and unreasonably unsafe for its intended purpose.

236. Defendants fraudulently concealed from or failed to disclose or to warn Plaintiffs, Plaintiffs' physicians, and the medical community that Abilify was defective, unsafe, unfit for the purposes intended, and was not of merchantable quality.

237. Defendants were under a duty to Plaintiffs to disclose and warn of the defective nature of Abilify because:

(a) Defendants were in a superior position to know the true quality, safety and efficacy of Abilify;

(b) Defendants knowingly made false claims about the safety and quality of Abilify in the documents and marketing materials Defendants provided to the FDA, physicians, and the general public; and

(c) Defendants fraudulently and affirmatively concealed the defective nature of Abilify from Plaintiffs.

238. Defendants were under a duty to Plaintiffs to disclose and warn of the defective nature of Abilify because the facts concealed or not disclosed by Defendants to Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase or use the product.

239. Defendants intentionally, willfully, and maliciously concealed or failed to disclose the true defective nature of Abilify so that Plaintiffs would request and purchase Abilify, and that their healthcare providers would dispense, prescribe, and recommend Abilify, and Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed or non-disclosed facts as evidenced by his purchase and use of Abilify.

240. At all material relevant times mentioned herein, Plaintiffs and their physicians were unaware of the concealed facts set forth herein. Had they been aware of those facts, they would not have acted as they did; that is, they would not have prescribed and/or taken Abilify, and Plaintiffs would therefore not have been injured.

241. Defendants, by concealment or other action, intentionally prevented Plaintiffs and Plaintiffs' physicians from acquiring material information regarding the lack of safety and effectiveness of Abilify, and are subject to the same liability to Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding Abilify's lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulentconcealment under all applicable law, including, *inter alia*, Restatement (Second) of Torts § 550 (1977).

242. As a result of Defendants' foregoing acts and omissions, Plaintiffs were and still are caused to suffer and are at a greater increased risk of serious and dangerous side effects including compulsive gambling, and other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, any and all life complications.

243. As a direct and proximate result of the foregoing acts and omissions, Plaintiffs have required and will require healthcare and services, and have incurred financial loss, medical, health care, incidental, and related expenses.

244. As a direct and proximate result of reliance upon Defendants' misrepresentations, Plaintiffs suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions. The losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future.

## TENTH CAUSE OF ACTION

### Loss of Consortium

245. Plaintiffs incorporate the factual allegations set forth in paragraphs 1 to 116 as if fully set forth herein and further allege as follows:

246. Plaintiffs' spouses have incurred financial loss as a result of Defendants' conduct.

247. As a result of Defendants' conduct, Plaintiffs' spouses were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their martial relationship.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff seeks judgment in Plaintiff's favor as follows:

1. Awarding actual Damages to Plaintiff incidental to the purchase and ingestion of Abilify in an amount to be determined at trial;
2. Awarding the costs of treatment for Plaintiff's injuries caused by Abilify;
3. Awarding damages for Plaintiff's neuropsychiatric, mental, physical, and economic pain and suffering;
4. Awarding damages for Plaintiff's mental and emotional anguish;
5. Awarding pre-judgment and post-judgment interest to Plaintiff;
6. Awarding punitive damages;
7. Awarding the costs and expenses of this litigation to Plaintiff;

8. Awarding reasonable attorney's fees and costs to Plaintiff as provided by law; and

9. For such further relief as this Court deems necessary, just and proper.

**DEMAND FOR A JURY TRIAL**

Each Plaintiff hereby demands a trial by jury as to all issues.

Dated: August 10, 2018

Respectfully Submitted,

/s/

Michael Louis Kelly (SBN 82063)
mlk@kirtlandpackard.com
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
Ruth Rizkalla (SBN 224973)
rr@kirtlandpackard.com
**KIRTLAND & PACKARD LLP**
1638 South PacificCoastHighway
Redondo Beach, CA 90277
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
RUTH RIZKALLA (SBN 224973)
KIRTLAND & PACKARD, LLC
1638 S Pacific Coast Hwy
Redondo Beach, CA 90277
TELEPHONE NO.: 310-536-1000 FAX NO.: 310-536-1001
ATTORNEY FOR (Name): Plaintiffs Brian Mack, et al.

FOR COURT USE ONLY

FILED
San Francisco County Superior Court
AUG 13 2018
CLERK OF THE COURT
BY: Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: same as above
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Brian Mack,v. Bristol Myers Squibb Company

## CIVIL CASE COVER SHEET

☑ **Unlimited** (Amount demanded exceeds $25,000)
☐ **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
☐ **Counter** ☐ **Joinder**
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CGC-18-568822
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☑ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☑ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*: 10
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08/10/2018
Ruth Rizkalla, Esq.
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BY FAX
ONE LEGAL LLC

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition



TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.